**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LARRY D. LEE, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-2800 |
| | § | |
| EXXON MOBIL CORPORATION, | § | |
|     Defendant. | § | |

**MEMORANDUM AND ORDER**

This case arises from events occurring during the employment of Plaintiff Larry D. Lee ("Lee") by Defendant Exxon Mobil Corporation ("Exxon") and the cessation of that employment. Pending before the Court is Exxon's Motion for Summary Judgment [Doc. # 58] ("Exxon's Motion"). Upon review of the parties' submissions,[1] all pertinent matters of record, and applicable law, the Court concludes that Exxon's Motion should be **granted**.

### I.    FACTUAL BACKGROUND

The background facts can be summarized as follows. Lee was hired by Exxon on March 7, 2005, as a sales associate at one of Exxon's company owned and operated service stations. Lee generally worked the 10:00 p.m to 6:00 a.m ("graveyard") shift, but at various times worked the day, evening and weekend shifts. Lee performed cashier functions, stocked merchandise, interacted with customers and vendors, and cleaned the store, among other duties. On August 28, 2005, Lee worked the evening shift from 2:00 p.m. to 10:00 p.m.

---

[1]    Lee has responded [Doc. # 62] to Exxon's Motion.

Two employees were scheduled to work the next shift, one of whom was a new-hire employee. However, at the end of Lee's scheduled shift only the new-hire employee had arrived, which meant that there was no one available to train the new-hire employee during the upcoming shift. At the request of his supervisor Brandi Mazzilli, Lee agreed to stay and work the graveyard shift with the new-hire. During that shift, Lee went outside to help a customer with the gas pump and slipped and fell on an oil spill outside the entrance to the service station. After the fall, Lee's wife picked him up and took him to a nearby hospital emergency room. Following a complete examination, the physician released Lee to return to work the next day without any limitations with respect to the job duties described by Exxon, including sitting, standing, or walking for up to eight hours, and lifting objects up to twenty-five pounds. After approximately four weeks off for recuperation, Lee returned to work at the same Exxon service station.

On February 13, 2006, Lee informed his supervisor Mazzilli in writing that he could not work the day shift and could not work weekends. Lee's letter did not state that his request was motivated by physical limitations or medical issues. On February 22, 2006, Exxon responded that, because of business and operational needs, it was unable to accommodate Lee's request for a fixed schedule at the single station where he was currently working. Exxon did, however, offer to accommodate Lee's request for a fixed schedule if Lee was willing to work at more than one store location. In the alternative, Exxon offered Lee the opportunity to move to part-time status which would allow him to work some, but not all, of the fixed schedule Lee proposed at his current store.

On March 27, 2006, Lee was scheduled to work the day shift but failed to report to work as scheduled and failed to call in with any explanation for the absence.  Pursuant to Exxon's "no show, no call" policy, this absence was treated as an employee resignation and Exxon processed the termination of his employment.  There is no dispute that Lee filed charges with the Equal Employment Opportunity Commission ("EEOC"), which issued a Notice of Right to Sue.  On August 30, 2007, Lee timely filed this lawsuit alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*

## II.    SUMMARY JUDGMENT LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas

essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the non-moving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak*, 953 F.2d at 913). However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist*., 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the non-moving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted

evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). "When evidence exists in the summary judgment record but the non-movant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (internal citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005).

Finally, the Court will given Lee's pleadings the liberal construction to which *pro se* plaintiffs are entitled.[2] Pleadings filed by *pro se* plaintiffs are construed by courts under a

---

[2] Exxon requests that the Court analyze Lee's claims "under the same legal and
(continued...)

less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Under this standard, pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See id.*; *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2000). Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se* parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' *pro se* parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment." (citing *Haines*, 404 U.S. at 520; *Grant v. Cellular*, 59 F.3d 523, 524 (5th Cir. 1995)). "[E]ven *pro se* litigants must comply with the Federal Rules of Civil Procedure and present proper summary judgment evidence." *Rolen v. City of Brownsfield*, 182 F. App'x 362, 365 (5th Cir. 2006) (unpublished).

---

2    (...continued)
evidentiary expectations as any other litigant, represented or otherwise," because Lee is "hardly inexperienced in the realm of prosecuting lawsuits against former employers." Exxon's Motion [Doc. # 58], at 7. Lee has previously sued Kroger for alleged race discrimination, Chevron for alleged race discrimination and sexual harassment, Wal-Mart for alleged discrimination. *Id.* The Court is not persuaded.

### III.    ANALYSIS

####    A.    Title VII Claims

Lee's Complaint is not a model of clarity. Broadly construed, Lee raises in his complaint two theories of relief cognizable under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Lee alleges first that he was the victim of disparate treatment because his termination was motivated on the basis of his race and sex. He also alleges that he was terminated in retaliation for charges he filed with the EEOC, the Texas Department of Insurance Division of Workers' Compensation ("TDIDWC") and the Texas Workforce Committee ("TWC"). For the reasons set out below, the Court concludes that Lee has failed to establish a *prima facie* case under either of his theories of relief.

####    1.    Disparate Treatment Claim

Unlawful discrimination under Title VII can be established through either direct or circumstantial evidence. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (citing *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1999)). Lee sets forth no direct evidence of disparate treatment; therefore, his claim will be analyzed using the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001).

Under this test, Lee must initially establish a *prima facie* case of race or gender-based discrimination in order to raise a presumption of discrimination. *Id.*; *see also Rutherford v. Harris County*, 197 F.3d 173, 179–80 (5th Cir. 1999). If successful, the burden then shifts to Exxon to articulate a legitimate, nondiscriminatory reason for its actions. *Okoye*, 245 F.3d

at 512. If Exxon sustains its burden, "the presumption of discrimination dissipates." *Wallace*, 271 F.3d at 220 (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). The burden then "shifts back to [Lee] to establish: (1) that the employer's proffered reason is not true[,] but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). "The plaintiff bears the ultimate burden of persuading the trier of fact . . . that the employer intentionally discriminated against [him] because of [his] protected status. *Wallace*, 271 F.3d at 220 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511–12 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

To establish a *prima facie* case of race discrimination, Lee must show "that he: (1) is a member of a protected class, (2) was qualified for [his] position, (3) was subject to an adverse employment action, and (4) . . . 'that others similarly situated [but outside the protected class] were treated more favorably.'" *Okoye*, 245 F.3d at 512–13 (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)); *see also Alvarado*, 492 F.3d at 611. For purposes of summary judgment, Exxon does not contest that Lee, an African-American male, is a member of a protected class for both race and sex purposes, that he was qualified to perform the job in question, or that he suffered an adverse

employment action.[3] Therefore, the only issue is whether Lee has satisfied the fourth element of his *prima facie* case.

To establish the fourth element of a *prima facie* case of race discrimination under Title VII, a plaintiff may present "circumstantial evidence that [he] has been treated differently than similarly situated non-members of the protected class." *Williams v. Trader Pub. Co.*, 218 F.3d 481, 484 (5th Cir. 2000) (citing *Polanco v. City of Austin*, 78 F.3d 968, 977 (5th Cir. 1996)). To satisfy the "similarly situated" requirement, the circumstances of the plaintiff and the non-protected class member must be more than similar, they must be "nearly identical." *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007); *Perez v. Tex. Dept. of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004). Thus, Lee must demonstrate "'that the misconduct for which [he] was discharged was nearly identical to that engaged in by a [female or non-African-American] employee whom the company retained.'" *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982)). Moreover, the "alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decision[ ]," *Perez*, 395 F.3d at 209, and the comparator employees' position in organization—*e.g.*, job title, duties, supervisor—should be roughly the same. *See, e.g.*, *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2007); *see also Ramirez v. Gonzales*, 225 F. App'x 203, 207–08 (5th Cir. 2005); *Little v. Republic*

---

[3] Exxon's Motion [Doc. # 58], at 9.

*Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991).

Lee has failed to meet his burden to offer evidence that a similarly situated female or non-African-American employee was not discharged for violating Exxon's "no show, no call" policy. Lee's Response lists the following individuals as non-minorities who were treated more favorably than he: "[H]ildegard [M]okee, [F]arah [B]urhani, [D]oug [CD]ozby, [P]amola [B]alla, [B]randon [P]eeroe, [and T]iffany [S]lapper."[4] However, Lee does not provide the Court with any information regarding the circumstances of any of the listed individuals and the Court cannot determine whether these employees were "similarly situated."

Lee's Response further alleges that Brandon Peeroe, a non-minority, failed to show up for the graveyard shift on August 27, 2005, the night Lee stayed after his scheduled shift to train the new-hire employee and the night that he was injured.[5] With respect to Peeroe, Lee has failed to provide evidence that Peeroe was in violation of the "no show, no call" policy when he did not arrive at work as scheduled on August 27, 2005, and that he was subsequently not terminated despite violation of that policy. This lack of proof is fatal to his claim. *See, e.g.*, *Preston v. Tex. Dep't of Family & Protective Servs*, 222 F. App'x 353, 358–59 (5th Cir. 2007) (sustaining summary judgment for the defendant-employer because the plaintiff "fail[ed] to present any evidence that [other] employees engaged in 'nearly identical' misconduct for which she was terminated" and because the plaintiff admitted to

---

[4]     Lee Response [Doc. # 62], at 4.

[5]     *Id.* at 8.

having no personal knowledge about the circumstances surrounding the putative comparator employee's alleged wrongdoing); *see also Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ("[T]he nonmovant cannot satisfy [his] burden [on summary judgment] with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."). Thus, Lee has failed to establish a *prima facie* case of disparate treatment race or sex discrimination. "[A] subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief." *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983). Exxon is entitled to summary judgment on Lee's disparate treatment claim.

### 2. Retaliatory Discharge Claim

Lee also alleges that Exxon terminated him in violation of Title VII in retaliation for filing charges of discrimination with the EEOC, TDIDWC, and TWC. Title VII retaliation claims are governed by the same *McDonnell Douglas* burden-shifting test applied to Lee's disparate treatment claim. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). "Under that framework, the employee's ultimate burden is to prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose." *Id.* However, the employee must first demonstrate a *prima facie* case of retaliation. *Id.* at 607. "To establish a *prima facie* case of retaliation, an employee must demonstrate that (1) he engaged in an activity that Title VII protects; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Lemaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir.

2007) (citing *Harvill v. Westward Commc'ns, LLC.*, 433 F.3d 428, 439 (5th Cir. 2005)).

For purposes of summary judgment, Exxon does not dispute that Lee filed an EEOC charge approximately four months before his employment ended, and thus engaged in a protected activity.[6] Exxon also does not dispute that Lee subsequently experienced an adverse employment action.[7] Therefore, the only issue is whether Lee has satisfied the third element of his *prima facie* case of retaliation.

Exxon contends that Lee has no evidence from which reasonable minds could find a causal connection between any of the protected activities in which Lee engaged an his subsequent termination.[8] Lee's only response is that Exxon retaliated against him for filing a complaint with the EEOC and that he "can prove the defendant's [sic] intentionally and willfully and otherwise harassed, discriminated and fired [L]ee."[9] He provides no specific as and cites to no admissible evidence. "Unsubstantiated or conclusory assertions that a fact issue exists" are not sufficient to raise a genuine fact issue. *Morris*, 144 F.3d at 380; *see also Freeman*, 369 F.3d at 860. Even *pro se* litigants must present proper summary judgment evidence. *Rolen*, 182 F. App'x at 365. Lee accordingly has failed to meet his summary judgment burden. Therefore, Exxon is entitled to summary judgment on Lee's retaliatory discharge claim.

---

[6]   Exxon's Motion [Doc. # 58], at 16.

[7]   *Id.*

[8]   *Id.*

[9]   Lee's Response [Doc. # 62], at 7.

### B. Disability Discrimination Claim

Lee claims that Exxon discriminated against him in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, when it terminated his employment because of his alleged disabilities. Exxon contends that Lee's claim fails because he lacks evidence to establish that he has a disability within the protection of the ADA. In order to survive summary judgment, Lee must raise a genuine issue of material fact whether Exxon discriminated against him on the basis of a provable disability.

#### 1. Burdens of Proof

The ADA makes it unlawful for an employer to discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Unlawful discrimination under the ADA can be established through either direct or circumstantial evidence. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). As Lee sets forth no direct evidence that he was discharged for unlawful reasons, his ADA claims are analyzed using the burden shifting test originally set forth in *McDonnell Douglas*. Under this test, Lee must first make a *prima facie* showing of discrimination; Exxon then must articulate a legitimate non-discriminatory reason for the adverse employment action; and, if Exxon meets its burden, Lee must then prove by a preponderance of the evidence that the defendant's explanation is pretextual. *See, e.g., Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003) (citing *Reeves v. Sanderson Plumbing Products, Inc.*,

530 U.S. 133, 143 (2000)); *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003); *Daigle*, 70 F.3d at 396.

### 2. *Prima Facie* Case

In order to make out a *prima facie* case of disability discrimination, Lee must establish that: "(1) [h]e is disabled or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees." *Gowesky*, 321 F.3d at 511 (citing *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000)); *see also Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); *Allen v. Rapides Parish Sch Bd.*, 204 F.3d 619, 623 n.3 (5th Cir. 2000); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999).

The ADA prohibits discrimination in employment against a "qualified" person with a "disability." The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA further defines "disability" to include "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(2); *Rodriguez v. ConAgra Grocery Prod. Co.*, 436 F.3d 468, 474 (5th Cir. 2006).

Merely having an impairment does not make one disabled for purposes of the ADA.

*Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002). The impaired individual must further demonstrate that the impairment substantially limits a major life activity. *Id.*; *ConAgra Grocery*, 436 F.3d at 474. The ADA does not define the terms "substantially limits" or "major life activities." In interpreting this standard, however, the Supreme Court and the Fifth Circuit have made clear that the terms must be "interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg.*, 534 U.S. at 197; *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003). "The substantial-limit requirement is the linchpin of § 12102(2)(A). Without it, the ADA would cover any minor impairment that might tangentially affect major life activities such as breathing, eating, and walking. For this reason, an impairment must not just limit or affect, but must substantially limit a major life activity." *Waldrip*, 325 F.3d at 655 (citing *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 565 (1999)). "'Substantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'" *Toyota*, 534 U.S. at 196.

To the extent Lee was suffering from a physical impairment, he has failed to present evidence that the impairment substantially limited a major life activity. Working is considered a major life activity. *See* 29 C.F.R. § 1630.2(I). To establish a substantial limitation on the major life activity of working, Lee must demonstrate a "significant restriction in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1120 (5th Cir. 1998). "Evidence of disqualification from a single position or narrow range of jobs will not support a finding that an individual is substantially limited from the major life activity of working." *Id.* Lee has

not presented any evidence that he was significantly restricted in his ability to perform as an Exxon sales associate, much less that he was significantly restricted in his ability to perform a class of jobs or a broad range of jobs.  When Lee was released from the emergency room, the examining physician completed a Work Limitations Form that stated Lee's injury did not restrict his ability to complete any of the job duties he would have to perform as a sales associate.[10]  Except for the several weeks Lee too off from work immediately after his accident (without his doctor's orders or even suggestion), Lee continued performing his duties as an Exxon sales associate from the date of his injury until March 26, 2006.  Furthermore, Lee testified that at and around the time that he was terminated by Exxon that he was also working a second job at Fry's Electronics.[11]  Lee cannot meet his burden to establish that he is substantially limited in the major life activity of working.  Lee has not alleged that he was substantially limited in any other major life activity.

The Court therefore concludes that Lee has failed to raise a genuine fact issue that he has an actual disability as defined by 42 U.S.C. § 12102(2)(A).  Furthermore, Lee has not alleged or presented any evidence that he had a record of a substantially limiting impairment, or that Exxon regarded him as disabled.  Therefore, as a matter of law, Lee has failed to establish a *prima facie* case of disability discrimination under the ADA.  The Court does not

---

[10]     Work Limitations Form, Exh. 6 to Exxon's Motion [Doc. # 58].

[11]     Lee Deposition [Doc. # 58, Exh. A], at 113.

reach the balance of the *McDonnell Douglas* test.[12]  Exxon is entitled to summary judgment on Lee's disability discrimination claim.

IV. **CONCLUSION**

The Court concludes that Lee has not met his summary judgment burden to demonstrate a genuine issue of material fact on the merits of any claim or theory he has pleaded in his complaint.  It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 58] is **GRANTED**.

The Court will issue a separate Final Judgment.

**SIGNED** at Houston, Texas, this 9th day of **December, 2008**.

_____
Nancy F. Atlas
United States District Judge

---

[12] The Court also does not reach the merits of Exxon's asserted affirmative defense of after-acquired evidence.

P:\ORDERS\11-2007\2800MSJ.wpd  81209.1042